**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | |
|---|---|
| JIRA CHURCHILL, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff,*<br><br>v.<br><br>US Fertility, LLC<br><br>    *Defendant.* | Case No.   21-370<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Jira Churchill by their undersigned counsel, bring this class action complaint against Defendant US Fertility, LLC (hereinafter "Defendant" or "USF") and its present, former, and future direct and indirect parents, subsidiaries, affiliates, and related entities, and further allege as follows:

### I.   NATURE OF THE ACTION

1.     Defendant US Fertility, LLC is a national fertility-clinic network headquartered in Rockville, Maryland. Defendant provides IT platforms, as well as administrative, clinical, and business services to 55 fertility clinics in 9 states, plus Washington D.C., making it responsible for the most fertility-related healthcare data in the United States.

2.     On November 25, 2020, Defendant publicly announced it had experienced a ransomware attack months earlier, resulting in a data breach affecting 27 of its 55 clinic locations (the "Data Breach"). The Data Breach resulted in "an unauthorized actor" acquiring "files" of "individuals' protected health information." https://www.usfertility.com/wp-content/uploads/2021/01/USF-Notice-Security.pdf (last accessed February 14, 2021).

3.      The Data Breach occurred between August 12, 2020, and September 14, 2020.

4.      The protected health information compromised in the Data Breach is highly valuable and protected personal and medical information including patient names, addresses, dates of birth, National Provider Identifier ("NPI") numbers, Social Security Numbers, drivers' license and state ID numbers, passport numbers, medical treatment and diagnosis information, medical record information, health insurance and claims information, credit and debit card information, and financial account information (collectively, "Personal Information;" "Personal Health Information;" or "PHI"). Plaintiff and the Class members relied upon promised confidentiality of their protected health information subject to the Data Brach when they sought services subject to this action.

5.      Plaintiff learned her PHI was compromised in the Data Breach through a letter Defendant sent to patients dated (on information and belief) as late as January 8, 2021.

6.      Plaintiff's and the other Class Members' PHI was exposed to unauthorized actors due to Defendant's negligent, unfair, or deceptive conduct, acts, and practices and cyber criminals obtained the PHI that Defendant collected and maintained on behalf of its clinics' patients based upon its promises of confidentiality.

7.      Defendant's conduct in allowing the Data Breach to occur was negligent, unfair, and/or deceptive and Defendant breached its duty to protect the confidentiality of Plaintiff's PHI and violated consumer protection privacy laws, resulting in concrete harm to Plaintiff and the Class.

II.     JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because at least one member of the Class, as defined below, is a citizen of a different state

than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

9.      This Court has personal jurisdiction over Defendant as it maintains its principal place of business in this District and is registered to do business in Maryland.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of events giving rise to this case occurred in this District.

### III.   PARTIES

11.      Plaintiff Jira Churchill ("Churchill") is a citizen and resident of the state of Maryland and Prince George's County. Churchill was a patient of the Shady Grove Fertility Center, a clinic for which Defendant provided network IT and other clinic management services. Churchill provided her Personal Information to the Defendant in reasonable reliance that Defendant would keep her information secure, employ reasonable and adequate security measures to ensure that hackers would not compromise her information, and notify her promptly in the event of a breach. Defendant provided her notice that her information was compromised by the Data Breach. As a result of the Data Breach, Churchill is taking measures and actions that she otherwise would not have to take to ensure that her identity is not further stolen and that her other accounts are not further compromised. Furthermore, as a result of the Data Breach, Plaintiff did not get what Plaintiff bargained for and she has been damaged with the loss of her confidential information.

12.      Defendant US Fertility, LLC is a Delaware limited liability company with a principal place of business of 9600 Blackwell Road, Suite 500, Rockville, Maryland 20850.

IV.    **FACTUAL ALLEGATIONS**

### a. Defendant's Privacy Obligations

13.    Defendant is the "largest network of fertility centers in the U.S." https://www.usfertility.com/about-us-fertility/ (last accessed February 14, 2021).

14.    Defendant provides administrative and operational support for more than 80 physicians in 55 locations. https://www.usfertility.com/physicians/ (last accessed February 14, 2021).

15.    In this capacity, Defendant provides secure data management for the fertility clinics in its network. This means ensuring that clinic records, which include patients' private and confidential PHI, is secure and not disclosed to unauthorized persons.

16.    Defendant had a duty to implement and maintain adequate security measures to safeguard the PHI in its possession, custody, and control.

17.    Plaintiff had a reasonable expectation that Defendant would safeguard her PHI as clinics in Defendant's networks affirmatively represented to its patients that, in providing PHI to the clinic, the patients' PHI would be kept confidential and used only in accordance with publicly available privacy policies.

### b. The Data Breach

18.    On November 25, 2020, Defendant issued a press release on its website stating that, on September 14, 2020, "USF experienced an IT security event . . . that involved the inaccessibility of certain computer systems on our network as a result of a malware infection." https://www.usfertility.com/wp-content/uploads/2021/01/USF-Notice-Security.pdf (last accessed February 14, 2021).

19.     As a result of the malware attack, files containing information on certain patients "were accessed without authorization." *Id*.

20.     Defendant possesses PHI of patients in the USF clinic network, including PHI of Plaintiff and members of the Classes.

21.     Defendant's public disclosure regarding the Data Breach stated Defendant determined that an "unauthorized actor" accessed patients' PHI between August 12, 2020, and September 14, 2020.

22.     As a result of the Data Breach, Plaintiff's and Class Members' PHI was viewed by the "unauthorized actor."

23.     On November 25, 2020, Defendant reported the Data Breach to the Secretary of the U.S. Department of Health and Human Services Office for Civil Rights. Defendant reported that the breach affected 878,550 individuals. *See* https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf. (last accessed February 14, 2021).

24.     In reporting the Data Breach to the Secretary of the U.S. Department of Health and Human Services Office for Civil Rights, Defendant effectively admitted the medical information involved in the Data Breach was unsecured protected health information as defined by 45 C.F.R. § 164.402. *See* 45 C.F.R. § 164.408.

25.     Unsecured protected health information is "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the Secretary." 45 C.F.R. § 164.402.

26.     On January 8, 2021, Defendant reported the Data Breach to the California State Attorney General. *See* https://oag.ca.gov/privacy/databreach/list (last accessed February 14, 2021)

27. Defendant additionally submitted a sample breach notification letter entitled "Notice of Data Incident" in which it outlined the information set forth in its press release and offered 12 months of complimentary credit monitoring and identity restoration services through TransUnion. *See* https://oag.ca.gov/system/files/US%20Fertility%2C%20LLC%20-%20Notice.pdf. (last accessed February 14, 2021) (Ex. 1).

28. In the sample letter provided to the Plaintiff and Class Members, Defendant admits an unauthorized party "acquired a limited number of files during the period of unauthorized access," including the aforementioned PHI. *Id.*

### c. The Data Breach Was Foreseeable and Preventable

29. Defendant had the resources to protect and preserve the confidentiality of Plaintiff's and Class Members' PHI in its possession but neglected to adequately implement data security measures.

30. The risk of hackers exploiting vulnerabilities in Defendant's computer and data security systems to try to steal Plaintiff's and Class Members' medical information was foreseeable and/or known to Defendant.

31. Data breaches in the healthcare industry have been widely reported and are generally known. *See* https://www.healthcareitnews.com/news/fbi-hhs-warn-increased-and-imminent-cyber-threat-hospitals (last accessed February 14, 2021).

32. Healthcare industry experts and law enforcement have publicly warned those in the industry that they must take measures to ensure the safety, encryption, and security of PHI.

33. Defendant was or should have been aware of its obligations under applicable law and regulations to protect PHI in its possession, custody, and control.

34.     Despite the foreseeability of the Data Breach, Defendant failed to adequately secure patients' PHI, causing harm to Plaintiff and members of the Classes.

### d.  Plaintiff's Experience

35.     Plaintiff, like each member of the proposed Classes, were patients at one of Defendant's network clinics.

36.     Since 2019, Ms. Churchill has been a patient at the Shady Grove Fertility Center and, in that capacity, provided her PHI to Defendant.

37.     Ms. Churchill first learned Defendant had compromised her PHI when she received a breach notification letter from Defendant informing her of the Data Breach and that her PHI was impacted.

38.     Ms. Churchill is not aware of any security event or data breach, prior to the Data Breach, that compromised her PHI.

39.     Ms. Churchill has incurred time, energy, frustration, anxiety, and aggravation, as well as damage to her credit and out of pocket expenses as a result of the Data Breach.

40.     Plaintiff's bank account was subjected to suspicious activity after the Data Breach, and Plaintiff was required to obtain a new debit card. As such, Plaintiff spent her own time updating financial information, due to Defendant's conduct, which resulted in the Data Breach.

41.     Plaintiff, like each member of the proposed Classes, expected Defendant to maintain the privacy of her PHI, including medical information, as a condition of providing it to Defendant's network clinics.

42.     Apart from offering complimentary credit and identity theft monitoring, Defendant has done nothing to mitigate the harms the Data Breach caused.

43.     As a direct and proximate result of the Data Breach, Plaintiff and Class Members have been placed at an imminent, immediate, substantial, and continuing increased risk of harm from fraud and identity theft. Plaintiff and Class Members must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions and healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.[1]

44.     In a recent survey conducted by the Medical Identity Fraud Alliance (MIFA), a healthcare industry trade group, fifty two percent (52%) of identity theft victims said their information was used to obtain government benefits like Medicare or Medicaid. And fifty nine percent (59%) had their identity used to obtain healthcare, while fifty six percent (56%) said a scammer parlayed their data into prescription drugs or medical equipment. *See* Fifth Annual Study on Medical Identity Theft, MED. IDENTITY FRAUD ALLIANCE, (Feb. 2015), available at http://www.medidfraud.org/wp-content/uploads/2015/02/2014_Medical_ID_Theft_Study1.pdf (last visited February 11, 2021).

45.     This type of injury and harm, including actual fraud, is directly traceable to the Data Breach. This harm is not just possible, not just certainly impending, it has happened and is ongoing, and all Class Members are in imminent and immediate danger of being further subjected to these injuries.

---

[1]   Report to Congressional Requesters, GAO, at 29 (June 2007), available at: http://www.gao.gov/new.items/d07737.pdf (last accessed Feb. 15, 2021).

46. The ramifications of Defendant's failure to keep its patients' PHI secure are long lasting and severe. Once PHI is stolen, fraudulent use of that information and damage to victims may continue for years.

47. The fraudulent activity resulting from the Data Breach may not come to light for years.

48. Plaintiff and Class Members have suffered, continue to suffer, and/or will suffer, actual harms for which they are entitled to compensation, including:

    a. Trespass, damage to, and theft of their personal medical information;

    b. Improper disclosure of their medical information;

    c. The imminent and impending injury from potential fraud and identity theft posed by having their medical information in the hands of criminal hackers;

    d. The imminent and impending risk of having their medical information used against them by spam callers to defraud them;

    e. Loss of privacy suffered as a result of the Data Breach;

    f. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

    g. Ascertainable losses in the form of deprivation of the value of Plaintiff's and Class Members' personally identifiable information within their medical information;

    h. Damage to their credit due to fraudulent use of their medical information; and

    i. Increased cost of borrowing, insurance, deposits, and other items which are adversely affected by a reduced credit score.

49. Defendant itself acknowledged the harm the Data Breach caused by offering Plaintiff and Class Members credit report and identity theft monitoring services.

50.     However, twelve months of identity theft monitoring does not protect Plaintiff and Class Members from a lifetime of theft risk and does nothing to reimburse Plaintiff and Class Members for the injuries they have already suffered.

## V.   CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and four Classes defined as follows:

> **The United States Class:** All persons in the United States whose PHI was compromised as a result of the Data Breach.

> **Maryland Subclass:** All Maryland residents, and all other persons who received clinic services in Maryland and whose PHI was compromised as a result of the Data Breach.

52.     The following people are excluded from the Classes: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which the Defendant or its parent has a controlling interest, and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of such excluded persons.

53.     <u>Numerosity</u>. The members of the proposed Classes consist of approximately 5,439 individuals who are spread across the United States. Accordingly, individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and the Court.

54.     <u>Commonality</u>. Questions of law and fact common to Plaintiff and the Classes: include:

    a.   Whether Defendant had a duty to use reasonable care to safeguard Plaintiff's and the Class Members' PHI, including medical information;

    b.   Whether Defendant breached its express and implied promises to safeguard Plaintiff's and Class Members' PHI, including medical information;

    c.   Whether Defendant knew or should have known about the inadequacies of its data security polices and system and the dangers associated with storing sensitive medical information;

    d.   Whether Defendant failed to use reasonable care and commercially reasonable methods to safeguard and protect Plaintiff's and Class Members' PHI, including medical information, from unauthorized release and disclosure;

    e.   Whether Defendant's conduct was deceptive, unfair, unconscionable, or constituted unfair competition;

    f.   Whether Defendant's conduct was likely to deceive a reasonable consumer;

    g.   Whether Defendant is liable for negligence or gross negligence;

    h.   Whether Plaintiff and members of the Classes are entitled to nominal damages, actual damages;

    i.   Whether Defendant's conduct in regard to the Data Breach violated applicable state laws;

    j.   Whether Plaintiff and members of the Classes were injured as a proximate cause or result of the Data Breach;

    k.   Whether Defendant's practices and representations related to the Data Breach breached implied obligations and warranties;

    l.   Whether Defendant has been unjustly enriched as a result of the conduct complained of herein; and

    m.   Whether Plaintiff and members of the Classes are entitled to damages, restitutionary, injunctive, declaratory, or other relief.

55.    <u>Typicality</u>. Plaintiff is a member of the Classes. Plaintiff's claims are typical of the claims of each Class Member in that Plaintiff and Class Members sustained damages arising out of the Data Breach, wrongful conduct, and unlawful practices, and Plaintiff and Class Members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

56.     <u>Adequacy</u>. Plaintiff is an adequate class representative because Plaintiff's interests do not conflict with the interests of the Classes she seeks to represent. Plaintiff's claims are common to all members of the Classes, and Plaintiff has a strong interest in vindicating the rights of absent Class Members. Plaintiff has retained counsel competent and experienced in complex class action litigation, specifically data breach and fertility center litigation, and they intend to vigorously prosecute this action.

57.     <u>Ascertainability</u>. Class Members can easily be identified by the objective criteria set forth in the Class definitions.

58.     <u>Predominance</u>. The common issues of law and fact identified above predominate over any other questions affecting only individual members of the Classes. Class issues fully predominate over any individual issue.

59.     <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because: (a) the joinder of all individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources; (b) the individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions; (c) when Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases.

60.     This class action is properly brought and should be maintained as a class action because questions of law or fact common to Class Members predominate over any questions

affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

61.    This class action is also properly brought and should be maintained as a class action because Plaintiff seeks declaratory and/or injunctive relief on behalf of Class Members on grounds generally applicable to the Classes. Certification is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive class (i.e., Defendant has failed to reasonably protect Plaintiff's and Class Members' PHI). Thus, any final injunctive relief or declaratory relief would benefit the whole class.

## VI.    CAUSES OF ACTION

Based on the allegations contained herein, Plaintiff brings the following Causes of Action on her own behalf and on behalf of the Class or Subclass as indicated below:

### Count I – Negligence
### By Plaintiff and on Behalf of Plaintiff and the United States Class

62.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

63.    Plaintiff and the United States Class entrusted their PHI to Defendant. Defendant owed Plaintiff and United States Class Members a duty to exercise reasonable care in handling and using the PHI in their care and custody, including implementing industry-standard security procedures sufficient to reasonable protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

64.    Defendant owed a duty of care to Plaintiff and United States Class Members because it was foreseeable that Defendant's failure to adequately safeguard their PHI in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PHI—just like the Data Breach that ultimately came to pass.

65. The risk that unauthorized persons would attempt to gain access to the PHI and misuse it was foreseeable. As the holder of vast amounts of patient personal and medical information, Defendant knew or should have known that it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the information.

66. Defendant breached its duty by failing to exercise reasonable care in securing the PHI of Plaintiff and United States Class Members, which failure in turn actually and proximately caused the Data Breach and Plaintiff's and United States Class Members' injuries.

67. In addition, Defendant owed Plaintiff and United States Class Members a duty to notify them within a reasonable time of any breach to the security of their PHI and to notify Plaintiff and United States Class Members individually of the scope, nature, and occurrence of the Data Breach. This duty is required and necessary in order for Plaintiff and United States Class Members to take appropriate measures to protect their PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps in an effort to mitigate the harm caused by the Data Breach. Defendant breached this duty by failing to notify Plaintiff and United States Class Members of the existence of the Breach until more than four months after it was detected.

68. Defendant's breach of its common-law duties to exercise reasonable care and its failure to timely notify Plaintiff and United States Class Members of the Data Breach actually and proximately caused Plaintiff and United States Class Members injury-in-fact and damages, including without limitation the theft of their PHI by criminals, improper disclosure of their PHI, lost benefit of their bargain, lost value of their PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted and was caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**Count II – Negligence *Per Se***
**By Plaintiff and on Behalf of Plaintiff and the United States Class**

69.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

70.     Plaintiff brings this claim individually and on behalf of United States Class Members.

71.     Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide reasonable and adequate computer systems and data security practices to safeguard Plaintiff's and United States Class Members' PHI. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect patients' PHI.

72.     Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect patients' PHI and not complying with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of patient information it collected and stored, and the foreseeable consequences of a data breach, including, specifically, the immense damage patients would suffer in the event of a breach.

73.     The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and United States Class Members.

74.     Defendant had a duty to Plaintiff and United States Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and United States Class Members' PHI.

75.     Defendant breached its duty to Plaintiff and United States Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and United States Class Members' PHI.

76.     Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence per se. As a result, Plaintiff and United States Class Members are entitled to a rebuttable presumption that Defendant was negligent.

77.     As a direct and proximate result of Defendant's negligence per se, Plaintiff and United States Class Members have suffered harm, including loss of time and money spent resolving fraudulent charges; loss of time and money spent obtaining protections against future identity theft; financial losses related to the treatment Plaintiff's and United States Class Members paid for that they would not have received had they known of Defendant's careless approach to cyber security; lost control over the value of their PHI; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen data, entitling them to damages in an amount to be proven at trial.

**Count III – Breach of Implied Contract**
**By Plaintiff and on Behalf of Plaintiff and the United States Class**

78.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

79.     Plaintiff brings this claim individually and on behalf of United States Class Members.

80.     Defendant entered into binding and enforceable contracts with Plaintiff and United States Class Members, which were implied-in-fact and supported by consideration including the

payment of services by Plaintiff and United States Class Members in exchange for healthcare services. These contracts included terms covering privacy and limiting the use and sharing of Plaintiff's and United States Class Members' PHI. Plaintiff and United States Class Members bargained for an adequate level of security and reasonable care with respect to the use, storage, and sharing of their PHI.

81.     These contracts incorporated Defendant's Privacy Policy wherein USF promised to protect the privacy of Plaintiff's and United States Class Members' personal information in accordance with federal and state privacy laws, as well as their own privacy policies. Specifically, in a written document provided to Plaintiff and United States Class Members in connection with their healthcare services, Defendant expressly promised Plaintiff and United States Class Members that it would only disclose their PHI under certain circumstances, none of which relate to the Data Breach.

82.     Based on this understanding, Plaintiff and United States Class Members accepted Defendant's offer of health services and provided Defendant with their PHI.

83.     Plaintiff and United States Class Members would not have provided PHI to Defendant had they known that Defendant would not safeguard their PHI.

84.     Plaintiff and United States Class Members fully performed their obligations under the implied contracts with Defendant.

85.     Defendant breached the implied contracts by failing to safeguard Plaintiff's and United States Class Members' PHI.

86.     The losses and damages sustained (as described above) were the direct and proximate result of Defendant's breach of the implied contract.

## Count IV – Unjust Enrichment
### By Plaintiff and on Behalf of Plaintiff and the United States Class

87.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

88.     This claim is plead in the alternative to the breach of implied contractual duty claim.

89.     Plaintiff and United States Class Members conferred a monetary benefit upon Defendant in the form of monies paid for healthcare services to Defendant's network clinics.

90.     Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and United States Class Members. Defendant benefited from the receipt of Plaintiff's and United States Class Members' PHI, as Defendant was compensated for providing data management services to the clinics in its networks regarding such PHI.

91.     As a result of Defendant's conduct, Plaintiff and United States Class Members suffered actual damages in an amount equal to the difference in value between their purchases made with reasonable data privacy and security practices and procedures that Plaintiff and United States Class Members paid for, and those purchases without unreasonable data privacy and security practices and procedures that they received.

92.     Under the principles of equity and good conscience, Defendant should not be permitted to retain money Plaintiff and United States Class Members paid which benefited Defendant, because Defendant failed to implement (or adequately implement) the data privacy and security practices and procedures for itself that Plaintiff and United States Class Members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

93.     Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and United States Class Members all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged herein.

94.     Defendant breached its fiduciary duties owed to Plaintiff and United States Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1).

**Count V – Declaratory Relief**
**By Plaintiff and on Behalf of Plaintiff and the United States Class**

95.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

96.     There is an actual controversy between Defendant and Plaintiff and United States Class Members concerning whether Defendant has a duty to implement additional safeguards to protect the PHI and medical information of Plaintiff and United States Class Members.

97.     Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is sought."

98.     Accordingly, Plaintiff and United States Class Members seek a declaration that Defendant has a duty to implement safeguards to guard against the future exposure of Plaintiff and United States Class Members' PHI.

**Count VI – Maryland Consumer Protection Act**
**MD. Comm. Code §§ 13-301, *et. seq.***
**By Plaintiff and on Behalf of Plaintiff and the United States Class**

99.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

100.     Defendant is a "person" as defined by Md. Comm. Code § 13-101(h).

101.     Defendant's conduct as alleged herein related to "sales," "offers for sale," or "bailment" as defined by Md. Comm. Code § 13-101(i) and § 13-303.

102.    Plaintiff and Class Members are "consumers" as defined by Md. Comm. Code §

13-101(c).

103.    Defendant advertises, offers, or sells "consumer goods" or "consumer services" as

defined by Md. Comm. Code § 13-101(d).

104.    Defendant advertised, offered, or sold goods or services in Maryland and engaged

in trade or commerce directly or indirectly affecting the people of Maryland.

105.    Defendant engaged in unfair and deceptive trade practices, in violation of Md.

Comm. Code § 13-301, including:

   a.   False or misleading oral or written representations that have the capacity,
        tendency, or effect of deceiving or misleading consumers;

   b.   Failing to state a material fact where the failure deceives or tends to deceive;

   c.   Advertising or offering consumer goods or services without intent to sell,
        lease, or rent them as advertised or offered;

   d.   Deception, fraud, false pretense, false premise, misrepresentation, or
        knowing concealment, suppression, or omission of any material fact with
        the intent that a consumer rely on the same in connection with the
        promotion or sale of consumer goods or services or the subsequent
        performance with respect to an agreement, sale lease or rental.

106.    Defendant engaged in these False or misleading oral or written representations

that have the capacity, tendency, or effect of deceiving or misleading consumers by:

   a.   Failing to implement and maintain reasonable security and privacy
        measures to protect Plaintiff and Class Members' PHI, which was a direct
        and proximate cause of the Data Breach;

   b.   Failing to identify foreseeable security and privacy risks, remediate
        identified security and privacy risks, and adequately improve security and
        privacy measures following previous cybersecurity incidents, which was
        a direct and proximate cause of the Data Breach;

   c.   Failing to comply with common law and statutory duties pertaining to the
        security and privacy of Plaintiff's and Class Members' PHI, including
        duties imposed by the FTC Act, 15 U.S.C. § 45, and the Maryland

Personal Information Protection Act, Md. Comm. Code § 14-3503, which was a direct and proximate cause of the Data Breach;

d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' PHI, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Maryland Personal Information Protection Act, Md. Comm. Code § 14-3503;

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' Personal Information; and

g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Maryland Personal Information Protection Act, Md. Comm. Code § 14-3503.

107.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers who relied upon them about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' PHI. Defendant's misrepresentations and omissions would have been important to a significant number of consumers in making financial decisions.

108.   Defendant's violations of the Maryland Personal Information Act are also *per se* violations of the MCPA.

109.   Defendant intended to mislead Plaintiff and Class Members and induce them to rely on their misrepresentations and omissions.

110.   Had Defendant disclosed to Plaintiff and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been required to implement

and adopt reasonable data security measures to comply with its legal obligations. Instead, Defendant maintained PHI in its databases, where it was insecure, and subject to attack over the course of potentially years. Patients, including Plaintiff and Class Members would not have provided Defendant with their PHI had they known that Defendant was misrepresenting the security of, and omitting the flaws in, its databases. Defendant could not have continued its business had it disclosed the truth about its lax security. Additionally, Plaintiff and Class Members would not have paid as much as they did for Defendant's services (directly or indirectly) had they known that Defendant would not keep their information secure. Accordingly, Plaintiff and Class members did not receive the benefit of their bargain.

111.    Defendant acted intentionally, knowingly, and maliciously to violate Maryland's Consumer Protection Act, and recklessly disregarded Plaintiff's and Class Members' rights.

112.    Defendant also violated other statutory claims as described herein, making its conduct unlawful.

113.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PHI.

114.    Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including damages, disgorgement, injunctive relief, and attorneys' fees and costs.

**Count VII – Maryland Personal Information Act**
**By Plaintiff and on Behalf of Plaintiff and the United States Class**

115.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

116.    Under Md. Comm. Code § 14-3503(a), "[t]o protect personal information from unauthorized access, use, modification, or disclosure, a business that owns or licenses personal information of an individual residing in the State shall implement and maintain reasonable security procedures and practices that are appropriate to the nature of personal information owned or licensed and the nature and size of the business and its operations."

117.    Defendant is a business that owns or licenses computerized data that includes personal information as defined by Md. Comm. Code §§ 14-3501(b)(1) and (2).

118.    Plaintiff and Class Members are "individuals" and "customers" as defined and covered by Md. Comm. Code §§ 14-3502(a) and 14-3503.

119.    Plaintiff's and Class Members' PHI, as described herein and throughout, includes personal information as covered under Md. Comm. Code § 14-3501(d).

120.    Defendant did not maintain reasonable security procedures and practices appropriate to the nature of the Personal Information owned or licensed and the nature and size of its business and operations in violation of Md. Comm. Code § 14-3503.

121.    The Data Breach was a "breach of the security of a system" as defined by Md. Comm. Code § 14-3504(1).

122.    Under Md. Comm. Code § 14-3504(b)(1), "[a] business that owns or licenses computerized data that includes Personal Information of an individual residing in the State, when it discovers or is notified of a breach of the security system, shall conduct in good faith a reasonable and prompt investigation to determine the likelihood that Personal Information of the individual has been or will be misused as a result of the breach."

123.     Under Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2), "[i]f, after the investigation is concluded, the business determines that misuse of the individual's PHI has occurred or is reasonably likely to occur as a result of a breach of the security system, the business shall notify the individual of the breach" and that notification "shall be given as soon as reasonably practical after the business discovers or is notified of the breach of a security system."

124.     Because Defendant discovered a security breach and had notice of a security breach, Defendant had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2).

125.     By failing to disclose the Data Breach in a timely and accurate manner, Defendant violated Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2).

126.     As a direct and proximate result of Defendant's violations of Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2), Plaintiffs and Class Members suffered damages, as described above.

127.     Pursuant to Md. Comm. Code § 14-3508, Defendant's violations of Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2) are unfair or deceptive trade practices within the meaning of the Maryland Consumer Protection Act, 13 Md. Comm. Code §§ 13-101, *et seq.* and subject to the enforcement and penalty provisions contained within the Maryland Consumer Protection Act. Plaintiff and Class Members seek relief under Md. Comm. Code §13-408, including actual damages and attorney's fees.

**REQUEST FOR RELIEF**

Plaintiff, individually and on behalf of members of the Class and Subclass, as applicable, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.      That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative; and appoint the undersigned as Plaintiff's Lead Counsel;

B.      That the Court grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

C.      That the Court award Plaintiff and Class and Subclass members compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

D.      That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendant as a result of its unlawful acts, omissions, and practices;

E.      That the Court award statutory damages, trebled, and punitive or exemplary damages, to the extent permitted by law;

F.      That the Court award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

G.      That the Court award pre- and post-judgment interest at the maximum legal rate; and

H.      That the Court grant all such other relief as it deems just and proper.

[signature on next page]

Dated: February 15, 2021

By: */s/ Phillip R. Robinson*
Phillip R. Robinson
CONSUMER LAW CENTER LLC
Bar No. 27824
8737 Colesville road, Suite 308
Silver Spring, MD 20910
Ph: 301-488-1304
Email: phillip@marylandconsumer.com

Joseph C. Peiffer*
PEIFFER WOLF CARR KANE & CONWAY, APLC
1519 Robert C. Blakes Sr. Dr.
New Orleans, Louisiana 70130
Ph: 504-605-2234
Email: jpeiffer@peifferwolf.com

Brandon M. Wise*
PEIFFER WOLF CARR KANE & CONWAY, APLC
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: 314-833-4827
Email: bwise@peifferwolf.com

*pro hac vice* forthcoming

*Counsel for Plaintiff and the Classes*